# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AVISON YOUNG-CHICAGO, LLC, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 17 C 0844 |
| v. | ) |
| | ) Chief Judge Rubén Castillo |
| KEITH PURITZ, et al., | ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Avison Young-Chicago, LLC ("Plaintiff"), a real estate brokerage firm, brings this action against its former brokers Keith Puritz, Brett Kroner, and Eric Fischer ("Defendants"), alleging violations of the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, and the Illinois Trade Secrets Act, 765 ILL. COMP. STAT. 1065/1-9, as well as claims of unjust enrichment and breach of contract. (R. 13, Am. Compl. ¶¶ 1-5, 8, 52-88.) Presently before the Court is Defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (R. 50, Mot.) The Court denies Defendants' motion for the reasons stated below.

## RELEVANT FACTS

Between March 27, 2015, and April 14, 2015, Defendants entered into separate, almost identical,[1] brokerage agreements with Plaintiff (collectively, the "Agreements") under which they agreed to perform real estate brokerage services. (R. 13, Am. Compl. ¶¶ 27, 34; *see also* R. 13-1, Puritz Agreement; R. 13-2, Kroner Agreement; R. 13-3, Fischer Agreement.) Each

---

[1] For example, the terms and conditions of Fischer's transition and contingent bonuses, (R. 13-3, Fischer Agreement at 2-3), are different from those of Puritz and Kroner, (R. 13-1, Puritz Agreement at 2-3; R. 13-2, Kroner Agreement at 2-3). The confidentiality and no raiding provisions, among other provisions, however, are identical. (*See* R. 13-1, Puritz Agreement at 7-9; R. 13-2, Kroner Agreement at 7-9; R. 13-3, Fischer Agreement at 6-8.)

1

Agreement has the same confidentiality and "no raiding" provisions. (R. 13-1, Puritz Agreement at 7-9; R. 13-2, Kroner Agreement at 7-9; R. 13-3, Fischer Agreement at 6-8.)

The confidentiality provision provides, in relevant part:

> 9. **Confidentiality.** In the course of Broker's engagement with [Plaintiff], Broker may obtain or create confidential information ("Confidential Information"), which means information or materials belonging, relating to, developed by or for, or purchased by or for [Plaintiff], [Plaintiff's parent], [any company affiliated to Plaintiff's parent], and/or their respective clients that is not publicly available, including without limitation, information or materials concerning: (i) real estate transaction, management, financing or consulting opportunities, or listings related to any types of properties or interests therein whether for sale, lease, encumbrance, or other conveyance; (ii) the names and all other information concerning existing or potential clients that are not generally known and are not readily ascertainable; (iii) marketing or sales; (iv) any and all records, mailing lists, correspondence, memoranda, files, presentation formats, manuals, forms, procedural information, and any other information; (v) employees, independent contractors, compensation arrangements, or the terms of employment or engagement of any employee or independent contractor; or (vi) financial condition or performance, strategy, operations, future or proposed products or services, ideas, techniques, know-how, trade secrets, or processes. Confidential Information also includes information that has [sic] obtained from a third party under an obligation of confidentiality. . . . Broker will not (i) disclose Confidential Information to any person or entity, or (ii) make any use whatsoever of Confidential Information.

(R. 13-1, Puritz Agreement at 7-8; R. 13-2, Kroner Agreement at 7-8; R. 13-3, Fischer Agreement at 6-7.) The no raiding provision provides, in relevant part:

> 14. **No Raiding**. During Broker's engagement with [Plaintiff] and for a period of twelve months following the expiration or termination of such engagement, Broker will not . . . solicit . . . any of the employees, independent contractors or salespeople of [Plaintiff], [Plaintiff's parent], or [any company affiliated to Plaintiff's parent] to leave [Plaintiff], [Plaintiff's parent], or [any company affiliated to Plaintiff's parent] and associate with a competing real estate services firm located in or serving the area served by Broker during Broker's engagement with [Plaintiff] or employ, engage, or retain (or arrange to have any other person solicit, employ, engage or retain) or otherwise participate in the employment, engagement, or retention of any employee, independent contractor or salesperson of [Plaintiff], [Plaintiff's parent], or [any company affiliated to Plaintiff's parent].

(R. 13-1, Puritz Agreement at 9; R. 13-2, Kroner Agreement at 9; R. 13-3, Fischer Agreement at 8.)

Plaintiff alleges that it agreed to pay Defendants a transition bonus, a contingent bonus, and ongoing commissions in exchange for Defendants' agreement to the confidentiality and no raiding provisions. (R. 13, Am. Compl. ¶¶ 28-32, 34; *see also* R. 13-3, Fischer Agreement at 1-3, 6-8.) Plaintiff claims that it took additional measures to protect its confidential information by instructing Defendants to read and familiarize themselves with Plaintiff's policies and procedures, which state that any confidential information belongs exclusively to Plaintiff if it was created or developed on Plaintiff's time or using Plaintiff's resources and relates to Plaintiff's business. (*Id.* ¶¶ 36-37, 39, 41.)

Plaintiff alleges that Puritz and Kroner's team brokered industrial real estate and lease transactions in the Midwest region, and, as part of a "select group of executives," Plaintiff entrusted them with access to its trade secrets, confidential information, and long-term business relationships with clients. (*Id.* ¶¶ 10, 18.) Additionally, Plaintiff claims that Kroner and Puritz attended monthly meetings restricted to the company's top executives where participants discussed the company's most important strategic issues, including potential acquisitions, client development initiatives, recruitment efforts, and competition with Cushman & Wakefield, a competing real estate brokerage firm. (*Id.* ¶¶ 12, 20.)

Plaintiff alleges that because Defendants Puritz and Kroner were principals of Plaintiff's firm, they had access to and knowledge of Plaintiff's strategic plans, including its plans related to client development, real estate deals, and recruitment. (*Id.* ¶ 24.) Moreover, Plaintiff claims that it introduced Defendants to a number of its existing and prospective clients and allowed Defendants to use its brand and goodwill. (*Id.* ¶¶ 25-26.) Plaintiff also gave Defendants access to

its software platform, "Apto," which stored all of Plaintiff's data regarding customer relationships, real estate properties, property listings, and pending and prospective real estate deals. (*Id.* ¶ 22.) Plaintiff alleges that Defendants were only given access to Apto based on their promises to abide by the Agreements. (*Id.* ¶ 23.)

On September 2, 2016, Defendants resigned from Plaintiff's firm and accepted positions at Cushman & Wakefield. (*Id.* ¶¶ 11-12.) During the weeks preceding Defendants' resignation, they allegedly downloaded confidential and trade secret information from Plaintiff. (*Id.* ¶ 13.) For example, Kroner allegedly copied most or all of the email from his company email account, including client emails and another email file containing detailed information about Plaintiff's clients. (*Id.* ¶¶ 45-47.) Additionally, Kroner and Fischer allegedly took paper files containing confidential and proprietary information about customers and their pending or contemplated real estate transactions. (*Id.* ¶¶ 48-50.) Plaintiff alleges that Defendants' actions have injured Plaintiff and will result in an irreparable loss of customers, revenue, and competitive standing. (*Id.* ¶ 16-17.)

## PROCEDURAL HISTORY

On December 22, 2016, Plaintiffs filed a complaint in the Circuit Court of Cook County, Illinois, and Defendants later removed the action to this Court pursuant to 28 U.S.C. §§ 1331 and 1441(a). (*See* R. 1, Notice of Removal; R. 1-2, State Court Compl.) On February 6, 2017, the Court dismissed the complaint without prejudice to Plaintiff's filing of a motion to remand or an amended complaint. (R. 8, Min. Entry.)

On March 29, 2017, Plaintiff filed a five-count amended complaint. (R. 13, Am. Compl.) Count I alleges that Defendants breached the confidentiality provision in the Agreements. (*Id.* ¶¶ 52-56.) Counts II and III allege that Defendants misappropriated trade secrets in violation of

the Illinois Trade Secrets Act, 765 ILL. COMP. STAT. 1065/1-9, and the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, respectively. (*Id.* ¶¶ 57-78.) Count IV claims unjust enrichment, and Count V claims that Defendants breached the no raiding provision. (*Id.* ¶¶ 79-88.)

Defendants answered the amended complaint on May 26, 2017, and have asserted counterclaims against Plaintiff for breach of contract, promissory estoppel, and violation of the Illinois Wage Payment and Collection Act, 820 ILL. COMP. STAT. 115/1-15. (R. 24, Answer; R. 59, Am. Countercl.) On August 9, 2017, Defendants jointly moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) as to Counts I and V of Plaintiff's amended complaint, which are the counts alleging breach of the confidentiality and no raiding provisions. (R. 50, Mot.; R. 51, Mem.)

Defendants argue that they are entitled to judgment on these counts because the confidentiality and no raiding provisions are unenforceable restrictive covenants as a matter of law. (R. 51, Mem. at 1, 4.) Defendants assert that these provisions are unenforceable because they lack sufficient consideration and impose restrictions greater than necessary to protect Plaintiff's legitimate business interests. (*Id.* at 1-15.) In response, Plaintiff argues that the Court should deny the motion because the confidentiality and no raiding provisions are supported by adequate consideration and reasonable to protect Plaintiff's legitimate business interests. (R. 55, Opp'n at 1-2.)

## LEGAL STANDARD

"Under Federal Rule of Civil Procedure 12(c), a party can move for judgment on the pleadings after the filing of the complaint and answer." *Supreme Laundry Serv., L.L.C. v. Hartford Cas. Ins. Co.*, 521 F.3d 743, 746 (7th Cir. 2008). "A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Gill v.*

5

*City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017); *see also Katz-Crank v. Haskett*, 843 F.3d 641, 646 (7th Cir. 2016) (applying the 12(b)(6) standard for a Rule 12(c) motion), *cert. denied*, 137 S. Ct. 2127 (2017). Under that standard, a complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual allegations are accepted as true, but "allegations in the form of legal conclusions are insufficient to survive" a motion to dismiss. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012).

## ANALYSIS

Defendants move for judgment on the pleadings as to Counts I and V of the amended complaint because they contend that the confidentiality and no raiding provisions are unenforceable restrictive covenants. (R. 50, Mot. ¶ 1.) Defendants argue that they are unenforceable because they lack sufficient consideration, are overly broad, and are oppressive restraints on trade. (*Id.*) "Post-employment restrictive covenants are carefully scrutinized by Illinois courts since they operate as partial restraints on trade." *Brown & Brown, Inc. v. Ali*, 592 F. Supp. 2d 1009, 1044 (N.D. Ill. 2009).[2] Generally, "a contract in total and general restraint of trade [is] 'undoubtedly' void because it 'necessarily' injures the public at large and the individual promisor." *Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 396 (Ill. 2011). Nevertheless, "a restrictive covenant will be upheld if it contains a reasonable restraint and the agreement is

---

[2] Because the Agreements have a choice of law provision selecting Illinois law as the governing law, (*see* R. 13-1, Puritz Agreement at 11; R. 13-2, Kroner Agreement at 11; R. 13-3, Fischer Agreement at 9), and the parties do not dispute that Illinois law applies, the Court will apply Illinois' substantive law in its analysis. *See Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) (ruling that courts "honor reasonable choice-of-law stipulations in contract cases . . . [and] do not worry about conflict of laws unless the parties disagree on which state's law applies" (citations omitted)).

supported by consideration." *Id.* The Court, therefore, turns to the pleadings to determine whether the confidentiality and no raiding provisions are supported by adequate consideration and are reasonable restraints of trade.

I.   **Adequacy of Consideration**

Under Illinois law, a legally enforceable contract includes an offer, acceptance, and consideration. *LKQ Corp. v. Thrasher*, 785 F. Supp. 2d 737, 742 (N.D. Ill. 2011). Consideration is a "bargained-for exchange of promises or performances," and "[a]ny act or promise which is of benefit to one party or disadvantage to the other is . . . sufficient consideration to support a contract." *Carter v. SSC Odin Operating Co., LLC*, 976 N.E.2d 344, 352 (Ill. 2012) (citations omitted).

Generally, Illinois courts do "not inquire into the adequacy of the consideration to support a contract." *Id.* However, when examining post-employment restrictive covenants, Illinois courts deviate from this traditional rule because "a promise of continued employment may be an illusory benefit where the employment is at will." *Montel Aetnastak, Inc. v. Miessen*, 998 F. Supp. 2d 694, 715 (N.D. Ill. 2014).

"[C]ontinued employment for a substantial period" is sufficient consideration to support a restrictive covenant. *See Brown & Brown, Inc. v. Mudron*, 887 N.E.2d 437, 440 (Ill. App. Ct. 2008). When the employment is not at will, and the employee resigns—as Defendants did in this case—this Court has expressed "doubts about inquiring into the adequacy of consideration." *Montel Aetnastak, Inc.*, 998 F. Supp. 2d at 715; *see also LKQ Corp.*, 785 F. Supp. 2d at 743 ("[T]he absence of any allegations suggesting that [the employee's] resignation was involuntary . . . raises doubts regarding whether the Court should attempt to evaluate the adequacy of consideration[.]"). The Court, however, will consider whether Defendants were continuously

employed for a "substantial period," such that their employment provides adequate consideration for the Agreements' restrictive covenants.

Defendants assert that when a company employs a person for less than two years, such continued employment on its own is inadequate consideration, and the company must provide additional consideration to support a post-employment restrictive covenant. (R. 65, Reply at 2-3.) Defendants argue that, because the only additional consideration Plaintiff provided was illusory, the confidentiality and no raiding provisions are not supported by adequate consideration. (*Id.* at 2.) In response, Plaintiff contends that Defendants' 17-month employment with Plaintiff constitutes adequate consideration. (R. 55, Opp'n at 6.) Thus, the Court must decide whether Defendants' employment with Plaintiff is adequate consideration for the no raiding and confidentiality provisions, even though Defendants' employment lasted for less than two years.

Because the Illinois Supreme Court has not addressed this issue, this Court "must make a predictive judgment as to how" the Illinois Supreme Court "would decide the matter if it were presented" with the issue. *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 635 (7th Cir. 2002); *see also Stericycle, Inc. v. Simota*, No. 16 C 4782, 2017 WL 4742197, at *4 (N.D. Ill. Oct. 20, 2017) (undergoing the same analysis to determine what Illinois courts consider a "substantial period" of employment for purposes of determining the adequacy of consideration supporting a post-employment restrictive covenant).

Illinois appellate courts are split on the issue of what constitutes a "substantial period" of employment sufficient to provide adequate consideration for a post-employment restrictive covenant. Some courts in recent years have suggested a bright-line rule in which two years or more of continued employment constitutes adequate consideration for a restrictive covenant, regardless of whether the employee was terminated or resigned. *See, e.g., Fifield v. Premier*

*Dealer Servs., Inc.*, 993 N.E.2d 938, 943 (Ill. App. Ct. 2013) ("Illinois courts have repeatedly held that there must be at least two years or more of continued employment to constitute adequate consideration in support of a restrictive covenant."); *McInnis v. OAG Motorcycle Ventures, Inc.*, 35 N.E.3d 1076, 1085 (Ill. App. Ct. 2015) (applying a two-year, bright-line rule to determine whether an employee was employed for a substantial period, but stating that such an approach has not abolished the alternative and more fact-specific, flexible test to determine the adequacy of consideration). Illinois appellate courts, however, have also employed a more flexible approach that is not limited to "a numerical formula for determining what constitutes substantial continued employment." *Woodfield Grp., Inc. v. DeLisle*, 693 N.E.2d 464, 469 (Ill. App. Ct. 1998). Under this flexible approach, Illinois courts have considered additional factors, "such as whether the employee or the employer terminated employment." *Id.* For example, in *McRand, Inc. v. van Beelen*, 486 N.E.2d 1306, 1314 (Ill. App. Ct. 1985), the court considered the employees' raises and bonuses, voluntary resignation, and the increased responsibilities they received after signing a restrictive covenant as factors weighing on the adequacy of consideration supporting a restrictive covenant.

Defendants argue that *McInnis v. OAG Motorcycle Ventures, Inc.*, 35 N.E.3d 1076 (Ill. App. Ct. 2015) reconciled Illinois law, and that Illinois law now clearly requires at least two years of continued employment for a post-employment restrictive covenant to be supported by adequate consideration. (R. 65, Reply at 3.) The Court disagrees. *McInnis* explained that "courts are not limited to a numerical formulation" in determining what constitutes a substantial period of employment because "other consideration would take the case out of *Fifield*'s bright-line rule of two years' continued employment." *McInnis*, 35 N.E.3d at 1085. *McInnis* also observed that *Fifield*'s bright-line, two-year rule did not abolish the fact-specific approach taken by other

Illinois courts to determine the adequacy of consideration supporting restrictive covenants. *Id.* at 1084. Thus, *McInnis* neither reconciles Illinois law nor offers a persuasive reason to apply the bright-line rule. Indeed, courts in this District have considered *McInnis* and nonetheless held that the Illinois Supreme Court would apply the more flexible test instead of the strict, two-year rule. *See Stericycle, Inc. v. Simota*, No. 16 C 4782, 2017 WL 4742197, at *4 (N.D. Ill. Oct. 20, 2017) ("Neither *Fifield* nor *McInnis*, however, offers a persuasive reason to apply a bright-line rule[.]"); *Apex Physical Therapy, LLC v. Ball*, No. 17-CV-00119-JPG-DGW, 2017 WL 3130241, at *2 (S.D. Ill. July 24, 2017) ("Five federal courts in the Northern District of Illinois and one federal court in the Central District of Illinois have predicted that the Illinois Supreme Court will reject the Illinois appellate court's bright-line rule in favor of a more fact-specific approach.").

Like these other courts, this Court predicts that, to determine the adequacy of consideration supporting post-employment restrictive covenants, the Illinois Supreme Court would reject the rigid, two-year approach and instead apply the flexible, fact-specific approach grounded in the totality of circumstances. Although the Illinois Supreme Court has not addressed the adequacy of consideration for such covenants, it has addressed the reasonableness of post-employment restrictive covenants. In *Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 404 (Ill. 2011), the court overruled a "rigid and preclusive" test to determine a covenant's reasonableness in favor of a test based on "the totality of facts and circumstances of the individual case." It is likely that the Illinois Supreme Court would similarly adopt the more flexible, fact-specific approach in *McRand* and *Woodfield* instead of *Fifield*'s rigid, two-year rule. *See Stericycle*, 2017 WL 4742197, at *4-5 ("[T]he Court is convinced that the Illinois Supreme Court would reject a bright-line two-year rule and apply a fact-specific approach in assessing consideration[.]"); *Allied Waste Servs. of N. Am., LLC v. Tibble*, 177 F. Supp. 3d 1103,

1109 (N.D. Ill. 2016) ("[I]f confronted with the question of the adequacy of consideration, the [Illinois Supreme Court] would likewise avoid the appellate courts' bright-line test in favor of a more flexible case-by-case determination, considering the totality of the circumstances."). Thus, the Court will apply the flexible, fact-specific test in lieu of the strict, two-year rule.

Under this test, Plaintiff's allegations of Defendants' employment for approximately 17 months and their subsequent voluntary resignation, (R. 13, Am. Compl. ¶¶ 9, 11, 27, 34; R. 55, Opp'n at 6), sufficiently plead a "substantial period" of employment to survive Defendants' motion for judgment on the pleadings. *See, e.g.*, *Montel Aetnastak, Inc.*, 998 F. Supp. 2d at 716 (ruling that fifteen months of continued employment and voluntary resignation were sufficient to constitute a "substantial period" of employment); *LKQ Corp.*, 785 F. Supp. 2d at 744 ("substantial period" of employment satisfied when employee worked for plaintiff for approximately twelve months before resigning voluntarily).

Additionally, the parties dispute various facts related to the sufficiency of consideration that the Court cannot resolve on a 12(c) motion. *See Gill*, 850 F.3d at 339. For example, Plaintiff alleges that Defendants received bonuses and ongoing commissions as additional consideration. (R.13, Am. Compl. ¶¶ 28-32; R. 13-3, Fischer Agreement; R. 55, Opp'n at 10.) Defendants, however, argue that the ongoing commissions do not constitute consideration because they were standard commissions that all of Plaintiff's brokers received. (R. 65, Reply at 6.) Defendants also contend, without any citation to the pleadings in this case, that the contingent bonuses amounted to "illusory consideration" because Defendants repaid them to Plaintiff. (R. 51, Mem. at 7 n.2.) These disputes raise factual questions outside of the pleadings regarding Defendants' commissions and bonuses. Thus, the Court denies Defendants' motion for judgment on the

pleadings to the extent it argues that the no raiding and confidentiality provisions lacked consideration.

## II. Reasonableness of the Confidentiality and No Raiding Provisions

Next, the Court must determine whether the confidentiality and no raiding provisions are unreasonable restraints on trade as a matter of law. A restrictive covenant "is reasonable only if the covenant: (1) is no greater than is required for the protection of a legitimate business interest of the employer-promisee; (2) does not impose undue hardship on the employee-promisor, and (3) is not injurious to the public." *Reliable Fire*, 965 N.E.2d at 396. "[W]hether a legitimate business interest exists is based on the totality of the facts and circumstances of the individual case." *Id.* at 403. "Factors to be considered in this analysis include, but are not limited to, the near-permanence of customer relationships, the employee's acquisition of confidential information through his employment, and time and place restrictions." *Id.* "No factor carries any more weight than any other, but rather its importance will depend on the specific facts and circumstances of the individual case." *Id.* "Thus, unless the covenant is patently unreasonable, the parties must be given a full opportunity to develop the necessary evidentiary record." *Allied Waste*, 177 F. Supp. 3d at 1110.

### A. The Confidentiality Provision

Turning to the reasonableness of the confidentiality provision, Defendants argue that the provision is overly broad and unenforceable because it limits their ability to work in their industry by preventing them from using any knowledge they gained while working for Plaintiff. (R. 51, Mem. at 11.) Defendants also argue that the provision's categories of information include far more information than necessary to protect Plaintiff's confidential information. (R. 65, Reply at 8, 10.) Plaintiff, however, denies that this is the case. (R. 64, Answer to Am. Countercl. ¶¶ 28 (denying allegations in the amended counterclaim that Plaintiff has "effectively prevented

12

[Defendants] from earning money as brokers"), 30 (same), 37 (same); *see also* R. 55, Opp'n at 10-12.)

Whether the confidentiality provision prevents Defendants from using any information they learned while working for Plaintiff, and whether every category of prohibited information contained in the provision is necessary for Plaintiff to protect its confidential information, is a factual dispute that this Court cannot resolve on a motion for judgment on the pleadings. *See Gill*, 850 F.3d at 339. Therefore, Defendants' motion for judgment on the pleadings as to the confidentiality provision is denied.

In denying Defendants' motion, the Court rejects Defendants' reliance on *AssuredPartners, Inc. v. Schmitt*, 44 N.E.3d 463 (Ill. App. Ct. 2015). In that case, the court had the benefit of considering undisputed evidence, a benefit this Court does not enjoy here. *See AssuredPartners*, 44 N.E.3d at 472-76 (considering "undisputed evidence presented" in an affidavit and "evidence presented in . . . circuit court proceedings"). Unlike *AssuredPartners*, there are no undisputed facts that Defendants point to that permits the Court to decide, on a Rule 12(c) motion, that the confidentiality provision is unreasonable as a matter of law because it would drastically limit Defendants' ability to work as real estate brokers. *See id.* at 476. Therefore, *AssuredPartners* is inapposite to this case and does not provide grounds for dismissal.

### B.     The No Raiding Provision

Next, Defendants argue that Plaintiff cannot "prove" that the no raiding provision is narrowly tailored to protect its interest in maintaining a stable workforce because the provision prohibits the solicitation of all of Plaintiff's employees, regardless of their level of employment. (R. 65, Reply at 12-13.) Additionally, Defendants argue that even if Plaintiff had a legitimate business interest in protecting its confidential and trade secret information, Plaintiff failed to narrowly tailor the no raiding provision to that interest because it fails to include a geographic or

13

industry limitation or any limitation related to a solicited employee's knowledge or access to confidential information. (*Id.* at 13-15.) In response, Plaintiff argues that the no raiding provision is reasonably calculated to protect its interests in maintaining a stable work force and to protect against the dissemination of its confidential and trade secret information. (R. 55, Opp'n at 12-13.)

Whether the no raiding provision is narrowly tailored to protect Plaintiff's interest in maintaining a stable work force requires the Court to make factual determinations. *See, e.g., Pampered Chef v. Alexanian*, 804 F. Supp. 2d 765, 787 (N.D. Ill. 2011) (considering evidence showing the instability of the plaintiff's workforce and turnover rate of its employees to determine whether a non-solicitation clause was tailored to protect plaintiff's interest in maintaining a stable work force). The Court, however, cannot do so on a motion for judgment on the pleadings. *See Gill*, 850 F.3d at 339. The Court must also make findings of fact to determine whether the no raiding provision is narrowly tailored to achieve Plaintiff's legitimate business interests of preserving confidential and trade secret information. *See, e.g., AssuredPartners*, 44 N.E.3d at 476 (considering evidence to determine that a restrictive covenant protecting confidential information was unenforceable because the covenant "drastically limit[ed]" the employee's "ability to work in the insurance industry").

Defendants also argue that the no raiding provision fails to include a geographic or industry limitation or any limitation related to a solicited employee's knowledge or access to confidential information. (R. 65, Reply at 13-15.) The no raiding provision, however, is limited to Defendants' solicitation of Plaintiff's employees to join "a competing real estate services firm located in or serving the area served by" Defendants during their employment. (R. 13-1, Puritz Agreement at 9; R. 13-2, Kroner Agreement at 9; R. 13-3, Fischer Agreement at 8.) Whether

14

these limitations are narrowly tailored to protect confidential information or Plaintiff's interest in a stable workforce, raise issues of fact for the reasons stated above. Thus, because it is not appropriate for this Court to engage in a fact-intensive inquiry on a motion for judgment on the pleadings, Defendants' motion as to Count V is denied. *See Allied Waste*, 177 F. Supp. 3d at 1110.

Defendants rely heavily on *Pampered Chef v. Alexanian*, 804 F. Supp. 2d 765 (N.D. Ill. 2011), but that case is not analogous. (R. 51, Mem. at 13-14.) In that case, the court, deciding whether injunctive relief was appropriate, considered evidence and determined that the employer had "not made a clear showing that it has some likelihood of succeeding on the merits with regard to the validity of its non-solicitation clause." *Pampered Chef*, 804 F. Supp. 2d at 797. Unlike the employer in *Pampered Chef*, Plaintiff does not have to make any "clear showing" at this stage in the litigation; rather, on a motion for judgment on the pleadings, Plaintiff need only allege sufficient facts that would allow the Court to reasonably infer that the no raiding provision is reasonable. *See Gill*, 850 F.3d at 339. Defendants' reliance on *Pactiv Corp. v. Menasha Corp.*, 261 F. Supp. 2d 1009 (N.D. Ill. 2003) and *Hay Grp., Inc. v. Bassick*, No. 02 C 8194, 2005 WL 2420415, at *1 (N.D. Ill. Sept. 29, 2005), is misplaced for similar reasons, as those cases were decided on motions for summary judgment. *See Pactiv Corp.*, 261 F. Supp. 2d at 1015 (ruling that a restrictive covenant was unenforceable based on the "undisputed facts" of that case, and that the restrictive covenant was unenforceable because the opposing party did not present evidence showing that the covenant was narrowly tailored or necessary to protect the employer's legitimate business interests); *Hay Grp., Inc.*, 2005 WL 2420415, at *6-7 (considering evidence and ruling on summary judgment that a restrictive covenant was unenforceable).

Accordingly, this Court cannot find that Defendants are entitled to judgment as a matter of law based solely on the pleadings. Further development of the factual record of this case is necessary before the Court can determine whether the confidentiality and no raiding provisions are unreasonable. *See Allied Waste*, 177 F. Supp. 3d at 1110.

## CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings (R. 50) is DENIED. The parties shall appear for a status hearing on December 13, 2017, at 9:45 a.m., to discuss the progress of this case. The parties are DIRECTED to reevaluate their settlement positions in light of this opinion and to exhaust all settlement possibilities prior to the status hearing and during their settlement conference scheduled for November 30, 2017.

ENTERED: _____
**Chief Judge Rubén Castillo
United States District Court**

**Dated: November 29, 2017**